679 S.E.2d 323

**Randy C. HUFFMAN, Secretary of the West Virginia Department of Environmental Protection, Appellee,**

v.

**GOALS COAL COMPANY, and Appellee,**

and

**Coal River Mountain Watch, Appellant.**

No. 34138.

Supreme Court of Appeals of West Virginia.

Submitted April 8, 2009.

Decided June 9, 2009.

725

A.M. "Fenway" Pollack, Esq., Charleston, for the W.Va. Dept. of Environmental Protection.

Robert G. McLusky, Esq., Christopher M. Hunter, Esq., Jackson Kelly PLLC, Charleston, Terry R. Sammons, Esq., Sammons Law Offices, PLLC, Gilbert, for Goals Coal Company.

Derek O. Teaney, Esq., Joseph M. Lovett, Esq., Appalachian Center for the Economy and the Environment, Lewisburg, for Coal River Mountain Watch.

KETCHUM, Justice:

In this appeal from the Circuit Court of Kanawha County, we are asked to examine a circuit court ruling upholding an administrative decision by the West Virginia Surface Mine Board ("the Board"). The circuit court affirmed the Board's conclusion that under the West Virginia Surface Coal Mining and Reclamation Act, *W.Va.Code*, 22–3–1, *et seq.*, a surface mine "permit area" is defined to include both the area which is indicated on the map submitted with the application for a surface mine permit, *and* which is identifiable by appropriate markers and monuments on the mine site.

As set forth below, we affirm the circuit court's decision.

## I.

### *Facts and Background*

Appellee Goals Coal Company operates a coal preparation facility at a site in Raleigh County near Sundial, West Virginia. This site has been in operation since 1974 when the previous owner of the site, Armco Steel Company, began constructing the coal preparation facility.

In 1977, Congress enacted the Surface Mining Control and Reclamation Act to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations[.]" 30 U.S.C. § 1202(a) [1977]. The federal Act encourages "cooperative federalism" by allowing a State to adopt its own comparable program for the regulation of mining. *See* 30 U.S.C. § 1253 [1977]. The State's "pro-

gram need not be identical to the federal program, as long as its provisions are at least as stringent as those provided for in the federal act." *Canestraro v. Faerber*, 179 W.Va. 793, 794, 374 S.E.2d 319, 320 (1988). West Virginia adopted a comparable mining regulation program, the West Virginia Surface Coal Mining and Reclamation Act, which took effect in 1981. *See 1980 Acts of the Legislature*, ch. 87.[1]

In 1982, pursuant to the West Virginia Act, a "permit to engage in surface mining" (No. D–66–82) was issued by the West Virginia Department of Environmental Protection ("the DEP")[2] to allow surface mining activities at the Goals Coal site.

The application for the 1982 permit included a map of the mining site intended to be covered by the permit (the "permit map"). The permit map was prepared by Clarence Waller, a registered professional engineer and licensed land surveyor. On the map, Mr. Waller intended to include within the boundaries of the permit those areas that had already been disturbed by the earlier development of the coal preparation facility at the site. Using a United States Geological Survey map, Mr. Waller sketched—*by hand*—the line enclosing the proposed permit area. None of the features Mr. Waller drew on the map were formally surveyed.

Before he prepared the permit map, Mr. Waller installed a permanent, end-of-mine-site marker at the western boundary of the area that had been previously disturbed (blasted, actually, to create flat land for the construction of a railway track) for the development of the coal preparation facility. Mr. Waller also sketched this permanent marker onto the permit map as a reference point showing the western boundary of the permit area. At a 2006 hearing regarding proposed revisions to the permit, Mr. Waller confirmed

1. The Legislature passed the Act on March 8, 1980, but specified that it did not take effect until the Governor issued a proclamation "finding that the approval of the West Virginia state program under section 503 of the federal 'Surface Mine Control and Reclamation Act of 1977' has been given by the Secretary of the U.S. Department of the Interior." *1980 Acts of the Legislature* at 388. The Act took effect on January 19, 1981, upon the required proclamation by the Governor.

2. The underlying action was prosecuted in the name of the then-Secretary of the DEP, Stephanie Timmermeyer. Under Rule 27(c)(1) of the *W.Va. Rules of Appellate Procedure*, the current Secretary, Randy C. Huffman, has been substituted as the party-in-interest.

that the end-of-mine-site marker he had installed in 1982 was still in its original location.

In 2003, Goals Coal sought and—apparently without objection—obtained a revision to its 1982 surface mine permit, a revision that allowed it to construct a coal storage silo (the "first silo"), ostensibly within the boundaries of the permit area. However, the first silo was located approximately 240 feet from Marsh Fork Elementary School.[3]

In 2005, Goals Coal submitted another request to revise the surface mine permit ("Revision 8") seeking to build another coal silo (the "second silo") next to the first silo, and also within 300 feet of the elementary school. Initially, the revision was approved. However, the DEP later rescinded its approval based on inconsistencies in maps submitted over the years by Goals Coal in connection with the company's various permit revision requests. Essentially, because of conflicting map depictions of the boundary of the permit area, the DEP questioned whether the proposed second silo was truly within the boundary of the permit area.[4]

Thereafter, in June 2006 Goals Coal submitted yet another request to revise the permit ("Revision 9"), again seeking to construct the second silo. This request was accompanied by a newly-prepared map of the original permit area that relied upon the end-of-mine-site marker to define the western boundary of the site. Goals Coal again proposed building the second silo in the original permit area, but within 300 feet of Marsh Creek Elementary School.

In an order issued on August 11, 2006, the DEP determined that the location for the proposed second silo fell within the boundaries of the original permitted area, as reflected in Mr. Waller's 1982 permit map.

Intervenor-below and appellant Coal River Mountain Watch ("CRMW") is a non-profit organization concerned with social, economic and environmental justice in the southern coalfields of West Virginia. CRMW appealed to the West Virginia Surface Mine Board ("the Board") the DEP's determination that the end-of-mine-site marker installed in 1982, and sketched on the 1982 permit map, could be used to establish the western boundary of the permit area. CRMW argued that the permit boundary had to be determined solely by the lines drawn on the permit map, without reference to the end-of-mine-site marker.

In its final order dated March 13, 2007, the Board unanimously affirmed the DEP's determination. The Board concluded that the DEP's decision to rely upon both the permit map and the end-of-mine-site marker to determine the correct boundary of the Goals Coal mining site was supported by the Surface Coal Mining and Reclamation Act. CRMW subsequently filed an administrative appeal of the Board's decision to the Circuit Court of Kanawha County.

After hearing oral argument by the parties, the circuit court affirmed the Board's final order in a detailed order filed September 25, 2007.[5]

**3.** The West Virginia Surface Coal Mining and Reclamation Act prohibits the issuance of surface mining permits that allow mining activities within 300 feet of certain facilities, such as schools, unless the "surface-mining operations" existed prior to August 1977. *See W.Va.Code*, 22-3-22(d)(4) [1994] (after August 3, 1977, "no surface-mining operations, except those which existed on that date, shall be permitted ... [w]ithin three hundred feet of any ... school[.]"). *See infra*, footnote 5.

**4.** Goals Coal appealed this determination to the West Virginia Surface Mine Board, which later affirmed the DEP's ruling. The Board concluded, in an order dated May 15, 2006, that the maps submitted with Revision 8 "contain inconsistencies, conflicts and ambiguities, to the extent those maps cannot be used to identify the permit boundary along the western edge of the permit,

and those maps cannot be used to determine whether or not the second silo is within or outside the permit." No parties appealed the Board's order.

**5.** In its August 11, 2006 order, the DEP also ruled that it could not grant Goals Coal the requested revision to the permit because the second silo did not qualify for the statutory "existing operation" exception to the prohibition against conducting mining operations within 300 feet of schools. *See supra*, footnote 3. Goals Coal appealed the DEP's order to the Board, asserting that mining activity had been ongoing on the Raleigh County permit area since 1974, and was therefore an existing operation when the federal surface mining act was adopted in 1977. The Board reversed the DEP's decision and, in a final order dated March 13, 2007, unanimously con-

CRMW now appeals the circuit court's order.

## II.

### Standard of Review

■ The issue being appealed is entirely one of statutory construction. We therefore review the circuit court's order *de novo.* Syllabus Point 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996) ("On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."); Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.")

## III.

### Discussion

Before analyzing the parties' arguments, we feel that we should first delineate what this case *is* about, and what it *is not* about.

This case involves the interpretation of several statutes. The sterile, narrow legal question presented by CRMW's appeal is simple: under the West Virginia Surface Coal Mining and Reclamation Act and the federal Surface Mining Control and Reclamation Act, is the "permit area" of a surface mine operation defined solely by the maps submitted with the original permit application? Or may the permit area be defined by reference to the maps *and* markers buried or installed on the mining site?

■ This case does not involve the public policy effects of these Acts. We are aware of the extensive public concern about appellee Goals Coal's decision to construct a second coal silo less than a football field's length from an elementary school. The DEP has determined it must allow the construction to occur in deference to statutory law. The wisdom or desirability of these decisions are outside the province of the judicial branch. Our law is clear that:

This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions.

*Boyd v. Merritt,* 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986). *See also, Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991) ("the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."); Syllabus Point 1, in part, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965) ("Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary.")

We now turn to the arguments of the parties.

The appellant, CRMW, contends that the Surface Mine Board erroneously concluded that federal and state mining laws require a permit area to be established by reference to both a map and boundary markers, and contends that the circuit court erred in affirming that conclusion. CRMW asserts that this conclusion is contrary to the plain language of the relevant statutes and regulations, and asserts that a mine permit area is defined solely by the permit map. CRMW contends that a boundary marker is "wholly irrelevant" to the boundaries of a permit area—

cluded that Goals Coal could construct the second silo under the "existing operation" exception.

This decision by the Board was appealed by the DEP to the circuit court, and later affirmed by the circuit court in its September 25, 2007 order. The DEP did not appeal the circuit court's decision.

even though, in this case, the permanent boundary marker is shown as an identifying point on the original and revised permit maps.

The appellees, Goals Coal and the DEP, argue that the CRMW's legal argument is an artifice designed to achieve a public policy goal: stopping the construction of the second coal silo. The appellees argue that CRMW is essentially asking the Court to find that the area where Goals Coal seeks to build the silo—which has been used as part of a coal preparation and shipping operation for over 30 years—is actually outside of the area covered by the 1982 permit. To reach this result, the appellees contend that the Court would have to disregard the boundary marker that was put in place in 1982 to mark the western boundary of the coal-mining operation. The appellees therefore argue that the statutory definition of "permit area" under state and federal law requires consideration of both the approved permit map and the boundary markers on the site.

■ Both state and federal law require that a mining permit area be "identifiable by appropriate markers" on the mining site. The West Virginia Surface Coal Mining and Reclamation Act defines a "permit area" as follows:

> "Permit area" means the area of land indicated on the approved proposal map submitted by the operator as part of the operator's application showing the location of perimeter markers and monuments and shall be readily identifiable by appropriate markers on the site.

W.Va.Code, 22–3–3(q) [2000]. Similarly, the federal Surface Mining Control and Reclamation Act states:

> "[P]ermit area" means the area of land indicated on the approved map submitted by the operator with his application, which area of land ... shall be readily identifiable by appropriate markers on the site[.]

30 U.S.C. § 1291(17) [1998].

However, appellant CRMW contends that the meaning of "permit area" is unambiguous and must be limited only to the first half of the state and federal definitions. In other words, CRMW takes the position that a "per-

mit area" is only "the area of land indicated on the approved [proposal] map" without any reference to markers on the mining site. To justify this reading of the statutes, CRMW conclusorily argues in its brief—without citation to any authority—that under the state statute "the permit maps control and [ ] the location of physical boundary markers on the ground is irrelevant." Under the federal statute, CRMW argues that the comma after the word "application" followed by the pronoun "which" sets everything off after the comma as "a nonrestrictive clause" that has no effect. However, a plain reading of the statutes leads us to reject CRMW's quixotic interpretations.

■ "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). "[G]enerally the words of a statute are to be given their ordinary and familiar significance and meaning[.]" *Amick v. C & T Development Co., Inc.*, 187 W.Va. 115, 118, 416 S.E.2d 73, 76 (1992). "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996). Moreover, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syllabus Point 1, *Consumer Advocate Division v. Public Service Commission*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

■ After carefully examining the parties' arguments, we conclude that the statutes at issue are clear and without ambiguity. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). According to the provisions of *W.Va.Code*, 22–3–3(q) and 30 U.S.C. § 1291(17), a surface

mine "permit area" is the area that is indicated on the approved map submitted with the permit application and is identifiable by appropriate markers on the mine site.[6]

We therefore find that the circuit court did not err, and properly affirmed the decision of the West Virginia Surface Mine Board.

### IV.

#### *Conclusion*

The circuit court's September 25, 2007 order is affirmed.

Affirmed.

Chief Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.

Judge FOX, sitting by temporary assignment.

---

6. This conclusion is compelled by the fact that Congress expressed a preference that permit application maps be drawn on a scale of 1:24,000 or 1:25,000. 30 U.S.C. § 1257(b)(13)(B). At the smaller of these scales, 1:24,000, 1 inch is the equivalent of 500 feet. At this scale, the thickness of a pen stroke of 1/20th of an inch identifying a boundary line would represent 25 feet on the ground.