# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Randy G. Whetstone,**
**Petitioner Below, Petitioner**

**FILED**

January 9, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-0751** (Kanawha County 12-AA-68)

**South Branch Career and Technical Center**
**and the West Virginia Department of Education,**
**Respondents Below, Respondents**


## MEMORANDUM DECISION

Petitioner Randy G. Whetstone, by counsel Richard A. Lindroth, appeals the May 28, 2013, order of the Circuit Court of Kanawha County that affirmed the decision of the Public Employees' Grievance Board ("Grievance Board") which dismissed petitioner's thirteen grievance actions against respondents, the South Branch Career and Technical Center ("South Branch") and the West Virginia Department of Education ("WVDOE"). Petitioner's grievances challenged his termination from employment as South Branch's director and other matters, including the manner in which his improvement plan was implemented and monitored. Respondents, by counsel Kelli D. Talbot, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Respondent South Branch is an area vocational program located in Grant County that serves students from Grant, Hardy, and Pendleton Counties. Seven such area vocational programs are operated by the West Virginia Board of Education ("WVBOE") pursuant to West Virginia Code §§ 18-2B-1 to -8.[1] However, West Virginia Code § 18-2B-2(b) allows the WVBOE to delegate its operational authority for area vocational schools to administrative councils which are composed of equal representation from each of the participating county boards of education, the superintendent of schools from each county, and the state director of vocational education (or the state director's representative).

---

[1] Pursuant to West Virginia Code § 18-2B-2(b), the WVBOE may promulgate rules necessary to carry out West Virginia Code §§ 18-2B-1 to -8.

Petitioner taught at South Branch from 2001 until July 12, 2007, when he was appointed as the school's director. Petitioner's contract provided that he was a 240-day employee and that he could be terminated at any time for just cause pursuant to West Virginia Code § 18A-2-8.[2]

On the first day of the 2007-2008 school year, thirteen of South Branch's fourteen instructors filed a grievance against petitioner. Petitioner claims that, thereafter, he was besieged by staff sick-outs, staff inciting students, lawsuits filed by South Branch staff and the West Virginia Education Association, and other problems. Due to the turmoil at the school, South Branch's administrative counsel requested that an agency of the WVBOE, the Office of Educational Performance Audits ("OEPA"), audit the school.

On April 9, 2008, the OEPA presented its audit report to the WVBOE, which found as follows:

> [South Branch] has a myriad of problems that need immediate attention. The school climate is tense and volatile. Relationships between teachers and administrative staff have deteriorated to the point of open conflict and confrontation of a hostile nature. Lack of building security, code of conduct violations, and the continued escalation of conflict coupled with other policy and statutory deficiencies at the school call for extraordinary circumstances and an emergency be declared to restore a safe environment at the school.

The report further indicated that "the teachers are not in conflict among themselves but do not trust or respect the administration. . . . The teachers are very critical of the administration for

---

[2] West Virginia Code § 18A-2-8 provides as follows:

(a) Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge.

(b) A charge of unsatisfactory performance shall not be made except as the result of an employee performance evaluation pursuant to section twelve of this article. The charges shall be stated in writing served upon the employee within two days of presentation of the charges to the board.

(c) The affected employee shall be given an opportunity, within five days of receiving the written notice, to request, in writing, a level three hearing and appeals pursuant to the provisions of article two, chapter six-c of this code, except that dismissal for the conviction of a felony or guilty plea or plea of nolo contendere to a felony charge is not by itself a grounds for a grievance proceeding. An employee charged with the commission of a felony may be reassigned to duties which do not involve direct interaction with pupils pending final disposition of the charges.

alleged verbal assaults, intimidation, confrontations, and alleged eavesdropping. . . . Reprimands of teachers by the director with students present were reported by teachers and students."

South Branch's administrative council endorsed the report and its recommendation that the council's authority to administer the school be rescinded and that the WVBOE assume control of the school. Immediately thereafter, the State Superintendent of Schools appointed WVBOE employee Ron Grimes ("the first monitor") to serve as the school's monitor.[3] The first monitor was tasked with (1) calming the hostile and volatile school environment and ensuring the students' safety; (2) assessing the school's financial status and ensuring that proper financial procedures were in place; and (3) assessing the root of the school's problems. The first monitor was also tasked with determining the amount of authority he would have over the school versus the amount of authority he would allow petitioner to have over the school.

In his first week at the school, the first monitor interviewed petitioner, all of the teachers and the school's other staff, some students, members of the administrative council, and select community members. The first monitor determined that the situation was volatile, particularly in regard to teacher-administration relations, and that everyone associated with the school shared some of the blame for the problems. The first monitor thereafter assumed total administrative control over the school, with the exception that petitioner remained in charge of certain administrative activities such as teacher observations and evaluations. The first monitor also discovered that, during the 2007-2008 school year, petitioner failed to complete South Branch's local educational agency plan; failed to apply for a School Building Authority grant; failed to plan for a North Central Accreditation review; and failed to apply for a program modernization grant.

On May 2, 2008, Ted Mattern ("the second monitor") replaced the first monitor. However, the first monitor remained at the school and provided assistance to the second monitor. Petitioner refused to meet with the second monitor and, at the end of May of 2008, threatened to leave the school for the summer despite the fact teachers and students were still present.

On July 8, 2008, the first and second monitors presented petitioner with a list of thirteen tasks petitioner was to complete within specifically designated time frames. Those tasks included: developing a class schedule; completing the student handbook; preparing a policy manual for review; developing a supervisory schedule for staff; drafting an agenda for an August 1, 2008, teacher meeting; and drafting an agenda for the student meetings to be held on the first day of school. Petitioner completed only two of these tasks in any substantive fashion. As a result, the WVBOE opted to place petitioner on an improvement plan.

The second monitor assisted in drafting petitioner's improvement plan which contained specific directives and deadlines. Thereafter, on August 27, 2008, a three-hour-long meeting was held to review the improvement plan. In attendance were petitioner; the first monitor; a third monitor, Ron Ray, who replaced the second monitor; and Assistant State Superintendent Dr. Stan Hopkins. The Assistant State Superintendent told petitioner that,

---

[3] The West Virginia Board of Education's takeover of South Branch was the first instance in which the State assumed control of an area vocational program.

It is as of today your authority over the vast majority of these things is reinstated. . . . as of today we're giving you back . . . authority over these things.

After today, the expectation is that you be given the authority to run this school under the authority of [the third monitor].

[The third monitor] is not here to do these things for you, but he is your monitor.

The assistant state superintendent then explained the plan and the WVBOE's expectations in detail. Petitioner was given ample opportunity to have input into his improvement plan at that time. However, although petitioner spoke frequently during the meeting, most of his comments related to his claims (1) that there were no deficiencies at the school, and (2) that the time he needed to spend addressing his grievances and related civil litigation would likely prevent him from complying with the improvement plan.

Two weeks later, the third monitor resigned and a fourth monitor, Dr. Cynthia Kolsun ("the plan administrator") was tasked with administering petitioner's improvement plan beginning on September 5, 2008. The plan administrator created a chart which listed the tasks petitioner was to complete in chronological order. The chart also allowed petitioner to track his progress on each task. The plan administrator met with petitioner to discuss each task listed on the chart. Thereafter, the plan administrator met frequently with petitioner to review his progress.

On September 14, 2008, petitioner filed a grievance in which he claimed he had been denied the opportunity to have input into his improvement plan. Thereafter, petitioner filed multiple additional grievances, primarily against the plan administrator, regarding (1) the manner in which his improvement plan was being implemented; (2) the plan administrator's written comments; and (3) his claims of harassment, discrimination, and favoritism. The last of these grievances was filed on November 15, 2008. At that time, the plan administrator recommended that petitioner be terminated based on his lack of leadership, consistency, and expertise in operating the school; his failure to complete a substantial percentage of his improvement plan objectives; and his repeated and documented insubordination.

Petitioner was terminated from employment on May 29, 2009. The WVBOE claimed just cause for petitioner's termination on the grounds that petitioner was insubordinate, had willfully neglected his duties, was incompetent, and had failed to comply with his improvement plan.

The Administrative Law Judge ("ALJ") who conducted petitioner's Level Three hearing held eight days of hearings on petitioner's consolidated grievances in 2010 and 2011. Thereafter, on April 14, 2012, the ALJ entered an extensive order in which he denied all of petitioner's grievances and found that the WVBOE had just cause to terminate petitioner. The ALJ noted that (1) petitioner's testimony was contradictory and lacked credibility; (2) petitioner tendered manufactured documents into evidence; (3) petitioner gave evasive testimony regarding his clandestine recording of meetings; (4) petitioner's "acknowledged behavior demonstrated his willingness to deceive and manipulate others"; and (5) petitioner's "interpretation of events was profoundly skewed and colored by perceived collusion or nefarious motives." The ALJ also found that (1) West Virginia Code § 18A-2-12, State Board of Education Policy 5310

4

(Performance Evaluation of School Personnel), and Policy 3232 (Establishment Procedures And Operating Policies For Multi-County Career And Technical Education Centers) did not apply to the director of a multi-county vocational school; (2) petitioner failed to prove that the WVBOE's improvement plan was arbitrary and capricious or clearly excessive; (3) the WVBOE proved that petitioner's actions were deliberate and intentional and, thus, constituted insubordination and willful neglect of duty that were terminable offenses, and that petitioner failed to demonstrate improvement during his improvement period; and (4) petitioner failed to meet his burden of proof that the penalty was clearly excessive or inherently disproportional, or that he was the victim of discrimination, favoritism, or harassment.

Petitioner appealed the Grievance Board's decision to the circuit court. By order entered May 28, 2013, the circuit court denied relief on the ground that the Grievance Board's findings and conclusions were neither clearly erroneous nor an abuse of discretion.

Petitioner now appeals the circuit court's order.

We review the circuit court's order in this case pursuant to Syllabus Point 1 of *Huffman v. Goals Coal Company*, 223 W.Va. 724, 679 S.E.2d 323 (2009), in which we held that

> "[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

223 W.Va. at 725, 679 S.E.2d at 324. Mindful of these principles, we consider petitioner's four assignments of error.

Petitioner first argues that the circuit court erred in affirming the Grievance Board's finding that he was exempt from the protections provided by Policy 5310 (Performance Evaluation of School Personnel) and West Virginia Code §§ 18A-2-8 (Suspension and dismissal of school personnel by board; appeal) and 18A-2-12 (Performance evaluations of school personnel; professional personnel evaluation process; restrictions on requirements on lesson plans and record keeping by classroom teachers). Petitioner contends that Policy 5310 and West Virginia Code §§ 18A-2-8, and -12 apply to directors of area vocational schools because such directors function as principals (who are county board of education employees), and not as school superintendents (who are not county board of education employees) as the Grievance Board found.

We first note that the Grievance Board based its finding that a director of a multi-county vocational school functions similarly to a county superintendent of schools based because both have similar job responsibilities which include (1) preparing annual budgets; and (2) performing the personnel functions set forth in West Virginia Code §§ 18A-2-1 to -13, which include posting open positions, hiring staff, suspending or dismissing employees, setting staff salaries, and

preparing a Comprehensive Educational Facilities Plan. Based on our review of the record on appeal, we cannot say that the circuit court erred in affirming this finding.

With regard to petitioner's claims that Policy 5310 applies to directors of area vocational schools, we note that petitioner cites to no legal authority in support of this claim. Instead, he relies solely on a comment in the OEPA's audit report of South Branch that the teacher evaluations and observations at the school were not being performed in accordance with Policy 5310. However, this brief comment does not equate to a statement from the OEPA that Policy 5310 applied to petitioner. Further, nothing in the language of Policy 5310 itself requires its application to a director of an area vocational school. Instead, both the policy, and the policy's enabling statute, West Virginia Code § 18A-2-12, clearly provide that they apply to employees of county boards of education. Petitioner was not an employee of a county board of education. Hence, we concur with the Grievance Board and the circuit court's finding that West Virginia Code § 18A-2-12 and Policy 5310 were not controlling in regard to petitioner's performance evaluation or dismissal. With regard to West Virginia Code § 18A-2-8, we also concur with the Grievance Board and circuit court's finding that § 18A-2-8 was relevant in the instant case, only by virtue of petitioner's contract which provided that he could be terminated at any time for just cause pursuant to West Virginia Code 18A-2-8.[4] Based on this record, we cannot say that the circuit court was clearly wrong in affirming the Grievance Board's finding that Policy 5310 and West Virginia Code §§ 18A-2-8 and -12 do not apply to petitioner.

Petitioner next argues that the circuit court erred in affirming the decision of the Grievance Board because petitioner's improvement plan was illegally promulgated and was administered in an arbitrary and unfair manner. Petitioner bore the burden of proving by a preponderance of the evidence that his improvement plan was illegally promulgated or arbitrary and capricious. However, based upon our careful review of the voluminous record in this case, we concur with the Grievance Board and the circuit court's finding that he failed to meet that burden. Here, petitioner was given multiple chances to address the deficiencies at South Branch, but he failed to acknowledge the deficiencies or to improve. As the record on appeal shows, each monitor attempted to work with petitioner to no avail. Then, when the first and second monitor saw little progress, they drafted a list of tasks in an effort to aid petitioner. However, petitioner failed to substantially complete most of those tasks. When petitioner complained he could not improve because he had no authority to run the school, the WVBOE returned that authority to him via his improvement plan which was explained to him in detail. Further, although he was given the opportunity to have input into the improvement plan at the August 27, 2008, meeting, he spent most of that time complaining that his legal affairs would preclude him from meeting the goals set out in his improvement plan. Finally, petitioner was given adequate time to complete the plan. As such, we find that the circuit court did not err in finding that the WVBOE did not abridge petitioner's substantial right to due process.

---

[4] West Virginia Code § 18A-2-8(a) provides that a school "board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge."

Petitioner's third assignment of error is that the circuit court erred in affirming the decision of the Grievance Board because the WVBOE failed to provide minimum qualifications and a job description for his monitors. Petitioner claims that this failure violated his right to due process and facilitated arbitrary and unfettered governmental action. However, contrary to petitioner's claims, the WVBOE's directive of April 9, 2008, clearly identified petitioner's monitors' duties as follows: (1) work at the direction of the state superintendent in overseeing and administering all functions of South Branch; (2) make recommendations to the State Superintendent of Schools regarding how any deficiencies may best be addressed; (3) oversee the evaluation of personnel and develop improvement plans where necessary; and (4) perform other tasks as assigned. Further, the record on appeal shows that each monitor was chosen based upon his or her relevant experience and expertise. Based on this record, we find no due process violation or arbitrary or unfettered governmental action in regard to the WVBOE's use of monitors. As such, we find no error.

The petitioner's fourth and final assignment of error is that the circuit court erred in affirming the decision of the Grievance Board because the WVBOE emergently assumed control of the South Branch without first filing a notice of intent to assume control of the school. During the Level Three grievance hearing, petitioner never argued that the emergency takeover of South Branch was invalid or improper. Issues first raised on appeal will not be considered on appeal. *See Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993). The exception to this general rule is where the previously unraised claim invokes a constitutional issue or an issue that controls the resolution of the case. *Louk v. Cormier*, 218 W. Va. 81, 87, 622 S.E.2d 788, 794 (2005). Here, however, the WVBOE's emergency takeover of South Branch was not a constitutional or controlling issue. Thus, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 9, 2015

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISQUALIFIED:**

Chief Justice Margaret L. Workman

7