# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Elizabeth Rainey,**
**Petitioner Below, Petitioner**

**vs) No. 14-0536** (Mason County 11-AA-76)

**West Virginia Department of Health and Human Resources/**
**Office of Healthcare Facility Licensure and Certification,**
**Respondent Below, Respondent**

**FILED**

May 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Elizabeth Rainey, by counsel W. Dale Greene, appeals the order of the Circuit Court of Mason County, entered April 16, 2014, that affirmed the determination by Respondent West Virginia Department of Health and Human Resources/Office of Healthcare Facility Licensure and Certification ("OHFLAC's") that petitioner's name should be permanently placed on the Nurse Aide Abuse Registry.[1] Respondent, by counsel Steven R. Compton, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner became a certified nurse assistant ("CNA") in January of 2010. In May of 2010, she gained fulltime employment as a CNA at Lakin Hospital Nursing Facility ("Lakin")[2]. Soon thereafter, on June 10, 2010, petitioner was involved in an incident with a patient at Lakin. The patient, L.S., is elderly, has significant health problems (including dementia), and has been diagnosed with mental retardation. A fellow Lakin CNA, Teresa Lawson, described the incident as follows: As she (Ms. Lawson) walked into L.S.'s room, she saw petitioner standing over

---

[1] The Nurse Aide Abuse Registry contains the names of nurse aides "who have admitted or have been adjudicated to have abused, neglected or misappropriated the property of residents of a facility, along with any additional information such as documentation of the state's investigation, the hearing date and the results as well as any written comments by the [n]urse [a]ide." W.Va. Code R. § 69-6-2.6.

[2] Lakin Hospital provides long-term nursing care services to West Virginia residents who have special placement needs due to behavioral, developmental, and other complex problems, and to whom community health will not or cannot provide these needed services.

L.S.'s bed. The bed was shaking or bouncing. She also heard petitioner tell L.S. to "shut up." Ms. Lawson could not see whether petitioner's hands were on the bed, or on L.S., given that petitioner's back was to Ms. Lawson. Ms. Lawson immediately reported the incident to her superiors who contacted OHFLAC.

OHFLAC investigated the incident[3] and found sufficient evidence to place petitioner's name on the Nurse Aide Abuse Registry (the "abuse registry"). Following notice of that decision, petitioner timely requested a hearing on the matter which was held on February 2, 2011. Both Ms. Lawson and petitioner testified at the hearing.

By order entered May 16, 2011, the hearing examiner recommended that petitioner's name be placed on the abuse registry for her verbal and psychological/emotional abuse of L.S. The hearing examiner based this decision on Lawson's "highly credible" testimony. The hearing examiner also found as follows:

> 15. It has been demonstrated by a preponderance of the substantial evidence that [L.S.] was under [petitioner's] care . . . and was the subject of physical and psychological abuse, and also verbal and psychological/emotional abuse in the form of bed shaking and yelling at [L.S.] to shut up. . . .

> 16. It has been demonstrated by a preponderance of the substantial evidence that [petitioner's] actions rose to the level of abuse, particularly and specifically, physical, verbal, and psychological/emotional abuse in her treatment of resident L.S. However, [petitioner] was charged only with verbal and psychological/emotional abuse and neglect in her notice [of this action].

On June 16, 2011, Michael J. Lewis, then the Secretary of the Department of Health and Human Resources ("DHHR"), entered a final order adopting the hearing examiner's recommendation that petitioner's name be placed on the abuse registry.

Petitioner appealed Secretary Lewis's final order to the circuit court. By order entered April 16, 2014, the circuit court affirmed the final order. The circuit court found that,

> the incident in question occurred on June 10, 2010, when [petitioner] was observed shaking [L.S.'s] bed, and depending upon the version, either yelling at, or telling, the resident to shut up. . . . As applied to the current case, upon consideration of the testimony and exhibits, as well as witness credibility, the [hearing examiner] correctly determined that [petitioner] abused L.S. . . . As a result of this abuse, permanent placement on the Abuse Registry was appropriate and should be affirmed.

The circuit court concluded that "[t]he record shows that [petitioner] violated [L.S.'s] rights when she chose to engage in questionable activities."

---

[3] The alleged victim, L.S., was not interviewed as part of the investigation due to her lack of capacity.

Petitioner now appeals the circuit court's order.

We review such orders pursuant to Syllabus Point 1 of *Huffman v. Goals Coal Company*, 223 W.Va. 724, 679 S.E.2d 323 (2009), in which we held that,

> "[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

*Huffman*, 223 W.Va. at 725, 679 S.E.2d at 324. Mindful of these principles, we consider petitioner's assignments of error.

Petitioner first argues that the hearing officer erred in finding that petitioner physically abused L.S. where (1) physical abuse was not charged against petitioner, (2) the parties agreed physical abuse was not an issue, and (3) Ms. Lawson (the witness) stated that she could not see whether petitioner was touching the bed or L.S. given that petitioner's back was to Ms. Lawson. Petitioner also argues that the circuit court was likely prejudiced by the hearing examiner's finding of physical abuse.

Before we begin our analysis of this assignment of error, we highlight the definitions of "abuse" relevant to this proceeding as found in Title 69 of the West Virginia Code of State Regulations. In Title 69, "abuse" is generally defined as "[t]he willful infliction of injury, unreasonable confinement, intimidation, or punishment, which results in pain, mental anguish or harm, even if the resident is unaware that the harm has occurred." W.Va. Code R. § 69-6-2.1. "Verbal abuse" is defined as

> [s]tatements made to, or in the presence of, a resident that result in ridicule or humiliation of the resident that result in ridicule or humiliation of the resident or the use of oral, written or gestured language that includes cursing, the use of demeaning, derogatory references to or descriptions of a resident or his or her family.

W.Va. Code R. § 69-6-2.13. "Psychological or emotional abuse" encompasses "[h]umiliating, harassing, teasing or threatening a resident; not considering a resident's wishes. . . ." W.Va. Code R. § 69-6-2.10. Finally, "physical abuse" consists of

> [a]buse resulting from Nurse Aide to resident contact including but not limited to striking the resident with a part of the body or with an object; shoving, pushing, pulling, pinching, tugging or twisting any part of the resident's body with fingers or nails; . . . engaging in physical contact that is knowingly, intentionally, recklessly or careless that causes or is likely to cause death, physical injury, pain or psychological harm to the resident. . . .

3

W.Va. Code R. § 69-6-2.9.

With regard to petitioner's complaints regarding the hearing examiner's finding that petitioner "physically abused" L.S., we highlight that the hearing examiner was the fact-finder in this case. As such, the hearing examiner was charged with weighing the evidence in order to assess witness credibility and to reach a final decision on the entire record. Given the evidence presented at the administrative hearing, we cannot say that the hearing examiner was clearly wrong in finding that petitioner physically abused L.S. by shaking her bed. That said, petitioner's name was clearly not placed on the abuse registry due to any physical abuse. However, even though the hearing examiner so found, the examiner recommended that petitioner's name be placed on the abuse registry due to her verbal and psychological/emotional abuse only. Petitioner's argument that the circuit court *may* have been prejudiced by the hearing examiner's finding of physical abuse is purely speculative and, therefore, must fail. Thus, based upon our deferential standard of review, we find no error.

Petitioner next argues that the circuit court erred in failing to state the type of abuse petitioner committed and, therefore, failed to justify its order that affirmed the placement of petitioner's name on the abuse registry. Petitioner's argument is based solely on the one sentence in the order on appeal, which states, "the record shows that [petitioner] violated [L.S.'s] rights when she chose to engage in *questionable activities*." (Emphasis added.) Although petitioner correctly quotes this sentence, he fails to note that it is the last sentence in the order. Therefore, it is clearly a conclusory statement summing up the totality of the circuit court's reasoning. In the body of the order, the circuit court specifically found that petitioner had committed "abuse" on June 10, 2010, "when [petitioner] was observed shaking [L.S.'s] bed, and . . . either yelling at, or telling, the resident to shut up." Therefore, the circuit court clearly set out the action amounting to "abuse" in the order on appeal. Accordingly, we find no error.

Petitioner's third, fourth, and eighth assignments of error make essentially the same claims: that the hearing officer erred in failing to set forth his reasons for finding Ms. Lawson more credible than petitioner, and that the circuit court perpetuated this error by rubber-stamping the hearing examiner's recommended order. Petitioner also claims that the hearing examiner ignored the following "facts": (1) that Ms. Lawson's story kept changing; (2) that petitioner had previously reported Ms. Lawson to her supervisor for breaching Lakin's rules; (3) that petitioner and Ms. Lawson had a personal conflict on the day of the incident at issue in this appeal; and (4) that Ms. Lawson was allegedly "snide, snotty, and unfriendly" to petitioner on the day of the incident.

A hearing examiner's credibility determinations are to be accorded deference. *Freeman v. Fayette Cnty. Bd. of Educ.*, 215 W.Va. 272, 599 S.E.2d 695 (2004). In this case, the hearing examiner's credibility determinations are clearly supported by the record. Ms. Lawson's account of the incident remained consistent throughout, even upon cross-examination by petitioner's counsel. The only inconsistency appears to be that Ms. Lawson said she heard petitioner "*tell*" L.S. to shut-up, and then said that petitioner "*yelled*" shut-up. Either way, Ms. Lawson consistently stated that petitioner said "shut-up." As for petitioner's claims that she and Ms. Lawson had a dispute on the day in question, Ms. Lawson denied any such dispute occurred during her testimony at the administrative hearing. As for petitioner's claims that she had twice

4

reported Ms. Lawson for rule violations, petitioner failed to enter any evidence that Ms. Lawson knew of petitioner's reports, other than her own testimony. Therefore, in light of our deferential standard, we cannot say that the hearing examiner's credibility determinations were clearly wrong.

Petitioner's fifth, sixth, and seventh assignments of error also make the same claims: that, in light of all of the evidence entered at the administrative hearing and the definitions of "abuse," respondent failed to enter "even a scintilla of evidence" that petitioner "abused" L.S. Petitioner further claims that respondent also failed to prove (1) that L.S. was harmed or made uncomfortable by the shaking of her bed, (2) that L.S. was bothered by being told to "shut-up" given her various impairments (i.e., given that she has dementia and has been diagnosed as mentally retarded).

As we noted above, the evidence in the record on appeal clearly shows respondent met its burden of proof in light of the applicable definitions of abuse. *See* W.Va. Code R, §§ 69-6-2.1 and -2.09, -2.10, and -2.13. As for petitioner's argument regarding whether L.S. was aware of or made uncomfortable or bothered by petitioner actions, we note that, pursuant to § 69-6-2.1, petitioner may be found to have abused a patient "even if the resident is unaware that the harm has occurred." Consequently, we find no error.

Petitioner's final assignment of error is that the circuit court should have employed a higher standard of proof than the "preponderance of evidence" standard established by the law of this State because she has lost her job and is unlikely to find another. Here, the circuit court applied the legally correct standard of review in this matter. Therefore, we find petitioner's argument to be without merit.

For the foregoing reasons, we affirm the circuit court's April 16, 2014, order.

Affirmed.

**ISSUED:** May 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5