# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Sheena Mortimer,**
**Petitioner Below, Petitioner**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-0598**  (Ohio County 16-C-64)

**West Virginia Department of**
**Health and Human Resources,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Sheena Mortimer, by counsel William C. Gallagher, appeals the May 20, 2016, order of the Circuit Court of Ohio County order affirming the report and recommendation of an administrative law judge for the West Virginia Department of Health and Human Resources ("DHHR") Board of Review that placed petitioner's name on the Nurse Aide Abuse and Neglect Registry[1] ("Registry") upon a finding of abuse and neglect. The DHHR, by counsel James "Jake" Wegman, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was a registered long-term care nurse aide ("CNA") employed by Guardian Elder Care (also referred to as Peterson Rehabilitation Hospital), a certified long-term care facility located in Wheeling, West Virginia. On March 19, 2015, the Office of Health Facility Licensure and Certification ("OHFLAC"), the state agency charged with investigating allegations of abuse and neglect by nurse aides in such facilities operating in West Virginia, *see* 69 C.S.R. § 6-2.8 (2010), received an "Immediate Fax Reporting of Allegations" form from petitioner's employer. It alleged that, on March 10, 2015, petitioner refused to provide care to Resident D.H. as she lay in bed in her room wearing a soiled adult brief with her call light out of reach. D.H. was a 79 year-old female with diagnoses including cognitive deficits due to cerebrovascular disease, chronic airway obstruction, pulmonary heart disease, depression, hypertension, dementia, psychosis, anxiety, opioid dependence, atrial fibrillation and aphasia. D.H.'s care plan required that she have assistance with activities for daily living, including being

---

[1] The registry was, at the time the events herein transpired, known as the Nurse Aide Abuse Registry. *See* 69 C.S.R. §§ 6-1 through -10.3 (2010). The registry became known as the Nurse Aide Abuse and Neglect Registry effective June 29, 2015.

1

toileted every two hours. She used pads and briefs for incontinence.

On March 25, 2015, OHFLAC received a "Five Day Follow-Up Report" form from petitioner's employer concerning the initial allegations. The report indicated that a statement was obtained and "verified [petitioner] was suspended on March 17, 2015. During counseling and suspension process in the HR office[,] [petitioner] stated 'I don't want to work here anymore.' She got out of [the] chair and left the office and [did] not listen to [the] HR Director and ADON [Assistant Director of Nursing Judy Nesbitt] regarding the pending investigation." OHFLAC, by Debra Cumpston, a registered nurse and OHFLAC's Health Facility Nurse Surveyor, then investigated the incident and prepared a report. The allegations of abuse and neglect were substantiated by OHFLAC's Long-Term Care Nurse Aide Abuse and Neglect Registry Committee. By letter dated August 20, 2015, OHFLAC notified petitioner of the committee's findings and its intent to place her name on the Registry.

At petitioner's request, a hearing was conducted before an administrative law judge ("ALJ") on November 18, 2015.[2] Based upon the evidence presented, the ALJ found that, on March 10, 2015, petitioner was assigned to seven rooms in Wing 6 of the facility, including D.H.'s room. At approximately 7:00 pm, Licensed Practical Nurse ("LPN") Sandy Griffith encountered petitioner, who stated, in reference to D.H., "I'm not going into the f*****g room by myself because she has a problem with me." Petitioner's remarks were made approximately two doors away from D.H.'s room. LPN Veronica Blythe was also working that evening as a nurse aide on D.H.'s floor. Blythe testified that she spoke to petitioner at a location that was "fairly close" to D.H.'s room. Petitioner loudly stated, "I'm not f*****g going in her room, she can f*****g rot in there for all I care."

When LPN Blythe went into D.H.'s room, D.H. was asking for help. Blythe observed D.H. laying uncovered and "spread eagle" with her adult brief undone and fecal matter all over her and the bed. The privacy curtain in the room was open. As LPN Blythe began to clean D.H., D.H. stated, "Thank god you're here. I don't know why they hate me so much. I don't know why Sheena [i.e., petitioner] is so mean to me." Blythe observed that D.H.'s call light was wrapped around a chair and out of her reach. D.H. told LPN Blythe that it was petitioner who had moved her call light there. D.H. later testified at the hearing that petitioner intentionally moved the call light out of her reach and did not provide incontinent care. According to LPN Blythe, D.H.'s roommate, Resident M.B., said that petitioner told her not to ring the call light for D.H.

According to Surveyor Cumpston, facility staff needs to check incontinent residents at least every two hours. Cumpston and ADON Nesbitt both testified that leaving a resident in feces or urine is a health risk that can lead to skin breakdown, other health problems, and violations of the resident's dignity.

The ALJ found that, under the Nurse Aide Abuse Registry Rules ("Registry Rules"), "a finding of neglect requires a failure to provide services necessary to avoid physical harm or mental anguish unless such actions are beyond the nurse aide's control." *See* 69 C.S.R. § 6-2.4

---

[2] In a Registry hearing, OHFLAC bears the burden of proof, "by a preponderance of the evidence." 69 C.S.R. § 6-6.8 (2010).

2

(2010). The ALJ found that the finding of neglect by the DHHR was supported by the evidence, including petitioner's failure to enter D.H.'s room, which resulted in LPN Blythe finding D.H. laying "spread eagle" in her bed and covered in feces, with her room door and privacy curtain open. Petitioner had also placed the call light out of D.H.'s reach. Similarly, the ALJ found that, under the Registry Rules, "a finding of psychological and emotional abuse requires humiliating and harassing a resident." *See* 69 C.S.R. § 6-2.10 (2010). In this case, petitioner prevented D.H. from asking for assistance when she was in need, as described above, and, knowing that she needed assistance, stated that D.H. could "rot in there for all I care." This conduct, the ALJ found, supported the DHHR's finding of abuse.

Based upon the foregoing, the ALJ concluded that "[t]he decision of the Nurse Aide Abuse Registry Committee to substantiate neglect and abuse should be upheld[,]" and that petitioner's name shall be placed on the Registry and remain there "until a court of law reverses the decision or [petitioner] petitions for removal of her name at the expiration of the placement period."

Petitioner appealed the ALJ's decision to the Circuit Court of Ohio County, which denied the appeal and affirmed the placement of petitioner's name upon the Registry. This appeal followed.

We consider petitioner's appeal under the following standard:

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. Pt. 1, *Huffman v. Goals Coal Company,* 223 W. Va. 724, 679 S.E.2d 323 (2009). Furthermore,

> "[g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. Pt. 1, *Cahill v. Mercer County Bd. of Educ.,* 208 W.Va. 177, 539 S.E.2d 437 (2000).

Syl. Pt. 1, *Sloan v. Dep't of Health & Human Res.*, 215 W. Va. 657, 600 S.E.2d 554 (2004).

On appeal, petitioner argues that the circuit court erred in affirming the ALJ's report and recommendation that she be placed on the Registry because the evidence did not support findings

that she committed psychological and emotional abuse and neglect with regard to D.H. Petitioner contends that the ALJ's factual findings that she used profanity when referring to D.H., that she refused to provide care to D.H., and that she placed D.H.'s call light out of reach were clearly erroneous. Petitioner denies that she made profane comments about or directly towards D.H. or that D.H. heard any such comments. Petitioner further contends that she did not place D.H.'s call light out of D.H.'s reach during the incident at issue; although D.H. testified that petitioner had placed the light out of reach on prior occasions, petitioner contends that D.H. did not specifically state that petitioner did so on this occasion. Finally, petitioner argues that the ALJ erred in failing to find that, based upon the testimony of petitioner and ADON Nesbitt, Nesbitt advised petitioner not to enter D.H.'s room alone because D.H. was known to throw things.

We find no error. It is undisputed that petitioner was the CNA assigned to D.H.'s room on March 10, 2015, and that D.H.'s care plan indicated that she was incontinent, used pads and briefs, and was to be checked and toileted every two hours. LPN Sandy Griffith testified that, at approximately 7:00 pm that evening, when D.H. was in need of assistance, petitioner refused to help her, stating that she was "not going into the f*****g room by myself because she has a problem with me." LPN Blythe similarly testified that petitioner loudly stated that "I'm not f*****g going in her room" and that she can "f*****g rot in there for all I care." Although petitioner made these statements several doors away from D.H.'s room, Griffith and Blythe agreed that the comments were made in reference to D.H. Further, LPN Blythe testified that D.H. was laying uncovered and "spread eagle" on her bed, with her adult brief undone and feces all over her hands, legs, and bed, and that the privacy curtain in the room was open. As Blythe was cleaning D.H. up, D.H. asked why petitioner was "so mean" to her and also informed her that petitioner moved her call light out of her reach. According to Blythe, petitioner told D.H.'s roommate, M.B., not to ring the call light for D.H. Blythe testified that D.H.'s call light was wrapped around a chair, out of D.H.'s reach. These factual findings were supported by the record; indeed, the circuit court was not permitted to substitute its judgment for that of the hearing examiner with regard to these factual determinations. *See Sloan,* 215 W. Va. at 657-58, 600 S.E.2d at 554-55, syl. pt. 1, in part. Further, "[c]redibility determinations made by an administrative law judge are similarly entitled to deference." *Id.*

Under the Registry Rules, "[p]sychological and [e]motional [a]buse" means "[h]umiliating, harassing, teasing or threatening a resident; not considering a resident's wishes; restricting a resident's contact with family, friends or other residents; ignoring a resident's needs for verbal and emotional contact; or violating a resident's right to confidentiality." 69 C.S.R. § 6-2.10 (2010). Further, "[n]eglect" means "[t]he failure to provide goods and services necessary to avoid physical harm, mental anguish or mental illness unless such actions are beyond the Nurse Aide's control." 69 C.S.R. § 6-2.4 (2010). Upon our plenary review of the application of the law to the facts of this case, we conclude that the ALJ's conclusions of law that petitioner abused and neglected D.H. were not made in error. Petitioner refused to help D.H. when she knew that D.H. was in need of toileting assistance. Petitioner's refusal to help resulted in other nursing staff finding D.H. laying on her bed, "spread eagle," and covered in feces. D.H.'s privacy curtain was open and her call light was placed out of reach. We find that petitioner's actions constituted neglect under the Registry Rules. Further, petitioner humiliated and harassed D.H. by intentionally placing D.H.'s call light out of D.H.'s reach, telling D.H.'s roommate not to ring for assistance on D.H.'s behalf when D.H. was in need of help, and declaring that petitioner could

4

"f*****g rot in [her room] for all I care." Based upon the above, we find that the ALJ did not err in concluding that petitioner abused and neglected D.H. under the Registry Rules.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 5, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker