No. 22-0365 – *In re G.G.*

WOOTON, J., concurring:

FILED

**June 8, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

This Court is confronted with a case involving a child's placement "only because too many people love this [child]." *In re Clifford K.*, 217 W. Va. 625, 646, 619 S.E.2d 138, 159 (2005); *see also In re J.P.*, 243 W. Va. 394, 400, 844 S.E.2d 165, 171 (2020) (same). Sadly, this is a rare occurrence in abuse and neglect cases. Here, the circuit court was tasked with deciding which of two equally suitable and loving homes should prevail in the contest to serve as G.G.'s permanent, adoptive placement. On one side are the foster parents — the family with whom G.G. has been placed for so much of her young life; on the other are G.G.'s maternal aunt and uncle, whom she only met late in these proceedings, but who clearly want only the best for her. In resolving that contest the circuit court ultimately determined that G.G.'s best interests were served by remaining with the foster parents, basing that decision largely on the amount of time G.G. had been in the foster parents' home, and on the lack of a statutory preference for permanent placement with blood relatives of the child.

I concur with the majority's conclusion that under the current legal framework there is no statutory preference for permanent placement with blood relatives, generally. *See* Syl. Pt. 2, in part, *In re K.L.*, 241 W. Va. 546, 826 S.E.2d 671 (2019) ("Apart from the grandparent and the sibling preferences, there does not exist an adoptive placement preference for a child's blood relatives, generally."). While I agree with the

1

majority's analysis of the law as it stands today, I believe recent amendments to the code suggest that the legislature may be moving towards legislation establishing a placement preference for a child's blood relatives. Accordingly, I write separately for two reasons: (1) to highlight that there is no statutory preference for permanent placement with a child's relatives; and (2) to stress that if there is to be such a permanent placement preference it will (and should) be accomplished through legislation.

Petitioners argued before this Court that in enacting the Foster Child Bill of Rights, West Virginia Code section 49-2-126 (Supp. 2022), the Legislature created a statutory placement preference for blood relatives. Specifically, Petitioners point to section 49-2-126(a)(5), which provides that children in the child welfare system have "[t]he right to be placed in a kinship placement, when such placement meets the objectives set forth in this article[.]" The majority correctly concludes that this language requires the circuit to analyze whether a child's placement in a kinship placement would serve his or her best interests. While I agree with the majority that this language does not in itself create a statutory adoptive placement preference for the child's relatives, a review of Chapter 49 suggests that such a preference may have been contemplated—not just by the language in section 49-2-126(a)(5), but by other provisions referencing placement with relatives of the child.

The Foster Child Bill of Rights clearly establishes that a child has "[t]he right to live in a safe and healthy environment, and the *least restrictive environment* possible[.]" *Id*. § 49-2-126(a)(1) (emphasis added). In this regard, the legislation leaves little question as to what constitutes the "least restrictive environment possible"; to wit: West Virginia Code section 49-4-601a (Supp. 2022) provides that "placement of a child with a relative is the least restrictive alternative living arrangement." There is no reason to believe the Legislature would ascribe the phrase "least restrictive environment possible" a different meaning in the Foster Child Bill of Rights (West Virginia Code § 49-2-126(a)(1)) than in West Virginia Code § 49-4-601a.

I agree with the majority that the plain language of section 49-4-601a limits its application to initial placements after the child is removed from the home, and acknowledge that there is no similarly limiting language found in the Foster Child Bill of Rights. At a minimum, this suggests that in affording a child the general right to live in "the least restrictive environment possible" and the separate right to "be placed in a kinship placement," the Legislature may be suggesting that a child's relatives are to be entitled to some type of preference.[1] The question is whether the Legislature intends that to be an adoptive placement preference.

---

[1] To be clear, while my focus is on the amendments to the code made after this Court's decision in *In re K.L.* was rendered, there is no shortage of provisions pre-dating that opinion which also suggest the existence of an adoptive placement preference for a child's relatives. For example, the statutes governing permanency hearings at least twice

3

I believe this Court is constrained from answering that question in the affirmative; the various statutory references to placement with relatives do not rise to a level sufficient for this Court to determine that there exists in the law an adoptive placement preference for the child's relatives, generally. Simply stated, other than grandparents and siblings, there is no clear statutory directive to deviate from this Court's holdings that there is no permanent placement preference for a child's relatives, generally.

The grandparent preference and the sibling preference both are set forth in distinct statutory provisions or subsections addressing *only* the preference and any

---

direct circuit courts to consider "permanent placement with a relative." The first such instance appears in West Virginia Code section 49-4-608(b) (2015), which applies when a child has not achieved permanency within twelve months of the dispositional decision. A similar directive is found in West Virginia Code section 49-4-608(e)(6), which sets out the required findings in circuit court orders following *any* permanency hearing, including that the circuit court provide "compelling reasons why it continues to not be in the best interest of the child to . . . be placed with a fit and willing relative." *Id*. § 49-4-608(e)(6)(C)(iv). While the full language of that provision runs the gamut of placement options—reunification, adoption, legal guardianships, and placement with a relative—the explicit reference to relative placement in the permanency context undeniably suggests the existence of a preference.

Finally, turning to the dispositional statute, West Virginia Code section 49-4-604 (Supp. 2022), the Legislature has intimated that the circuit court must consider "whether the child should . . . [b]e considered for *permanent* placement with a fit and willing relative" in the context of a *temporary* guardianship under section 49-4-604(c)(5)(E0(ii) (emphasis added). That directive is internally contradictory because it applies to a temporary placement, but directs consideration of a *permanent* placement with a relative. We addressed that statute in *K. L.* and determined that it only applied to temporary placements. 241 W. Va. at 555, 826 S.E.2d at 680. Nonetheless, this statutory inconsistency adds to confusion as to whether there exists a permanent placement preference for relatives of a child.

attendant considerations in effectuating that preference. For example, the grandparent preference embodied at West Virginia Code section 49-4-114(a)(3) (2015) provides: "[f]or purposes of *any* placement of a child *for adoption* by the department, the department shall *first consider* the suitability and willingness of any known grandparent or grandparents to adopt the child. . . .[the department] shall assure that the grandparents are offered the placement of the child *prior to the consideration* of any other prospective adoptive parents." *Id.* (emphasis added). The language could not be plainer: grandparents are entitled to the first chance at adoptive placement of the child. The subsection then sets out plainly what is required to effectuate that preference (e.g., a successful home study). *See id.* Likewise, the statute establishing the sibling preference (West Virginia Code section 49-4-111 (2015)), delineates a preference for keeping siblings together, when possible, and if in the best interests of the children. There is no comparable statutory permanent placement preference for blood relatives.

Abuse and neglect proceedings involve the protection of the most vulnerable persons in this State's court system: our children. The development of rules concerning the protection of those children is a complex task, necessitating the careful balancing of many factors, not the least of which is the best interests of those children. While we may appreciate the potential benefits of a permanent placement preference for a child's relatives, the fact remains that under our system of government the Legislature has the responsibility to examine the legal framework, assess any available evidence, consider expert opinions, and engage in a comprehensive evaluation of what would aid in serving

the best interests of the children of this state. *See* Syl. Pt. 2, in part, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009) ("It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.") (emphasis in original). While a child's relatives may offer potential advantages as placement options—as the Legislature has recognized in providing that relatives receive preference for *initial* placement, *see* West Virginia Code section 49-4-601a—it is not within the purview of this Court to create a *permanent* placement preference in the absence of clear legislative guidance. "The principles of judicial conservatism *require* us . . . not to bestow upon ourselves the role of superlegislature simply because we do not believe [the Legislature] went far enough." *Tug Valley Pharmacy, LLC v. All Plaintiffs Below in Mingo Cnty.*, 235 W. Va. 283, 298, 773 S.E.2d 627, 642 (2015) (Benjamin, J., concurring) (emphasis in original).[2] For that reason, if the Legislature desires that such a preference exist, it must revise the Code to make that clear; and if the public wishes that such a preference exist, its remedy lies not with us, but with the elected members of the Legislature.

In sum, I agree with the majority that currently there is no statutory preference for permanent placement of a child with blood relatives of that child. While

---

[2] It is essential to recognize that the judiciary's role is to interpret and apply the law, not to legislate from the bench. *See Henry v. Benyo*, 203 W. Va. 172, 181, 506 S.E.2d 615, 624 (1998) ("As a Court charged with reviewing and interpreting the will of the Legislature, we are constrained to abide by its mandates and to refrain from creating 'judicial legislation.'").

there are hints or suggestions, there is no clear statutory expression sufficient to justify this Court concluding that such a preference is the express public policy of the State. Accordingly, for the foregoing reasons I respectfully concur.