# CHARLESTON.

### C. P. MOORE *v.* K. C. HUTCHINSON *et al.*

### (No. 5980)

Submitted October 25, 1927.    Decided November 1, 1927.

PARTNERSHIP—*Where Person, by Conduct, Conversation, Admissions, or Otherwise, Allows Himself to be Held Out as Member of Prospective Partnership, and Thereby Third Party Is Induced to Turn Over Goods, to Said Partnership, Such Person, to Extent of Liability, Incurred, is Estopped From Denying Existence of Such Firm.*

Where a person, by his conduct, conversation, admissions, or otherwise, allows himself to be held out as a member of a prospective partnership, and thereby a third party is induced to turn over certain goods to said partnership, such person, to the extent of liability, thus incurred, is estopped from denying the existence of such firm.

Error to Circuit Court, Jackson County.

Notice of motion for judgment in Circuit Court of Jackson County, filed by C. P. Moore, plaintiff in error, against K. C. Hutchinson and others. Judgment for plaintiff, defendant brings error.

*Affirmed.*

*J. L. Wolfe* and *W. L. Taylor,* for defendant in error.
*Lewis H. Miller* and *Harper & Baker,* for plaintiff in error.

WOODS, JUDGE:

C. P. Moore filed a notice of motion for judgment in the circuit court of Jackson County to recover the amount due on a certain stock of merchandise alleged to have been sold to defendants, trading as Kyer & Company. While Kyer made no defense, Hutchinson, the other defendant, pleaded non-assumpsit and denied the existence of a partnership relation between him and Kyer. Hutchinson prosecutes error to this Court.

C. P. Moore had engaged in the hardware business in Ravenswood for forty-two years. J. W. L. Kyer had been

retained in his employ for twenty years—the last five at Ravenswood. K. C. Hutchinson, who was connected with a building and loan association, the president of a bank, and a farmer, had engaged in the mercantile business in said town for many years, and was a dealer in hardware—the competitor of Moore. During his forty-two years in business, Moore had acquired the agencies of five lines of hardware, to-wit, The DeLavel Separator Company, Fairbanks-Morse & Company, John Deere Plow Company, Oliver Stove Works, and Wired Plow Company. He had enjoyed the benefit of these agencies for over twenty years.

Some time prior to the institution of this action, C. P. Moore went to Florida for his health and turned the business over to his two sons. T. G. Moore, as an agent of his father, decided to close out the business, and secured the services of a sales agency to advertise and sell out the entire stock of goods. The sale was started on the 9th day of July, 1926. Moore testified that after the sale had been going on for a short time, Kyer (who was still in his employ) informed him of a certain conversation with Hutchinson regarding the taking over of the five agency lines, and the employment of Kyer to look after that part of Hutchinson's business; that, thereupon, he and Kyer went up to see Hutchinson and discussed the matter with him; that after several conferences, Hutchinson decided that it would be better to take over certain other goods together with the five agency lines, and conduct the business at Moore's old stand; that on the 14th day of August 1926, Hutchinson, after having had a private talk with Kyer, directed him and Kyer to go down and invoice the goods embraced within the five agency lines, and told him (Moore) that any contract the said Kyer made with him in regard to the purchase of said goods would be satisfactory, and that if he was needed during the invoicing of said goods, if they would call him up, he would come and see them, and that as soon as the invoicing was done that he (Hutchinson) would settle for the goods. Moore stated that at this time he asked Hutchinson regarding the transfer of the five agency lines, and told him that the partnership would have to have a name and that Hutchinson replied "call the concern

Kyer & Company''. These transfers were later secured to Kyer & Company through the efforts of T. G. Moore. The evidence shows that the invoice was commenced, and that the property, as the same was invoiced, was moved over to that portion of the building rented by Kyer & Company, and Kyer began to sell the stock as partnership property as rapidly as the same was invoiced and turned over to Kyer & Company. Moore states that at the time of the sale, Hutchinson stated that he would stand good for the goods so taken over by Kyer. Along about the 4th of October, when the invoice had been entirely completed, and tabulated, Moore went to Hutchinson and asked for a settlement, and Hutchinson told him that he couldn't agree with Kyer, and that the ''deal was off''. And this action was instituted shortly after this refusal to pay.

The demurrer to the notice and motion to quash on the ground that the cause of action, if any, is against Hutchinson alone, is not well taken. The motion, in substance, averred that the firm of Kyer & Company was a partnership, composed of K. C. Hutchinson and J. W. L. Kyer, and that the action was against the firm. It stated that the stock of merchandise in question was sold to the firm, and that the same was to be settled for by Hutchinson, for and on behalf of the partnership, and that he was looking to the partnership for payment.

After the demurrer to the notice had been overruled, the defendant pleaded non-assumpsit and filed an affidavit denying the existence of a partnership. All through the trial, however, he maintained that the recital in the notice, and the evidence adduced, to the effect that he had told plaintiff's agent that the same was to be settled for by him, destroyed any possible theory of a partnership transaction, and that any liability thereunder, if established, would be purely personal. For this reason he insists that the present action must fail. But, as we have already indicated, this position is not well taken in view of the pleading. The question of who is to pay, or settle with a third party, is ordinarily a matter between the partners themselves. Moore testified that he sold the goods to Hutchinson and Kyer, trading as Kyer & Com-

pany, and that he looked to the company for payment. The fact that Hutchinson held himself out as a partner is sufficient to estop him from denying the reality of a partnership between him and Kyer. The cases cited by the plaintiff in error to support his contention that a partnership had not been proven to exist between the defendants, dealt with actions where one party sued another on the theory of an existing partnership between them. It must be borne in mind, however, that the same degree of proof is not necessary on the part of third parties. As to such, a holding out of one's self as a partner is sufficient to fix liability. "Where a person, by his conduct, conversation, admissions, or otherwise, allows himself to be held out as a member of a prospective firm, and thereby a third party is induced to credit said firm, such person, to the extent of liability, thus incurred, is estopped from denying the existence of such firm." *Moore* v. *Harper,* 42 W. Va. 39. Also see *Jacobs* v. *Shorey,* 48 N. H. 100; *Burr* v. *Byers,* 10 Ark. 398; *Crozier* v. *Kirker,* 4 Tex. 252.

The testimony of Kyer tended to corroborate that of Moore. The contention that Hutchinson had held himself out to Moore as a partner was strengthened by Kyer's introduction of a letter, which he testified was received shortly after the invoice had commenced. This letter is in words and figures following:

"HUTCHINSON & HUDSON
MANSFIELD TIRES
General Merchandise, Hardware and Feed
CASH PAID FOR PRODUCE
Ravenswood, W. Va.

Aug. 23-26

Mr. John Kyer

Sir      I would advise not to buy too heavy just now. Money matter is very slow. Mr. Moore will give you time but be careful it wont be long until due. Come up & want to talk with you a bit any way.

I can't get ready soon as you asked for.

(Signed)   K. C. Hutchinson."

Kyer testified that the foregoing letter had reference to the contract of purchase made with Moore for Kyer & Company. This is denied by Hutchinson, who states it was made in regard to another transaction. However, the jury evidently settled that part of the controversy by its verdict.

While the defendant seeks to deny any and all liability as a partner or as an individual, his testimony in many instances tends to corroborate that adduced on behalf of the plaintiff in a number of material facts. For instance, he testified that he had discussed the purchase of a part of the stock, and that perhaps as early as the 12th of August, Moore and Kyer had broached the subject to him. He virtually admitted that a name for the partnership had been discussed in his presence. He also testified that he had directed Moore and Kyer to make up an invoice of a part of the stock, adding the qualification that he was to choose what he wanted therefrom. This all goes to show that partnership matters had been discussed between them. Added to this, the fact that Moore discontinued his closing out sale and began to invoice the goods and turn the same over to Kyer & Company tended to show that a deal of some kind had been consummated. An inference might properly be drawn that it was to Hutchinson's interest, as a dealer in hardware, to seek to prevent goods in which he dealt from being thrown on the market by Moore's closing out sale.

While defendant contends that it was improper to admit evidence in regard to the renting of the building to Kyer & Company at the time of the alleged sale, as well as Moore's statements to the effect that $1,000 had been expended in preparing for and carrying on the closing out sale, and that he had stopped the same and discharged the sales agency to invoice the goods to Kyer & Company, we believe that, under the issues raised in this case, they were proper for the purpose of showing that Moore had recognized the firm of Kyer & Company, and believed that such a partnership existed.

Plaintiff's instructions Nos. 1, 4 and 5 were based on that principle that the defendant by his actions, etc., was estopped from denying the existence of a partnership, and properly placed that phase of the case before the jury. *Moore* v.

*Harper, supra; Jacobs* v. *Shorey, supra; Townley Bros.* v. *Crickenberger,* 64 W. Va. 379; *Setzer* v. *Beale,* 19 W. Va. 274, 287. While it was not absolutely necessary, as hereinbefore pointed out, to plaintiff's recovery in this case to show an actual existing partnership between the defendants, we do not believe the court committed any error in giving plaintiff's instructions Nos. 2 and 3, regarding the proof necessary to establish a partnership.

The defendant's peremptory instruction was properly refused. His other two instructions were given. The second tells the jury that before the plaintiff can recover anything, it must appear by a preponderance of the evidence that the defendants purchased the goods in question from the plaintiff as partners; that the burden of establishing the fact of such partnership rests upon the plaintiff all the way through the trial; and that in determining whether in fact such a partnership ever existed between said defendants, and whether as such partners they entered into the contract with the plaintiff as claimed by him, they must take into consideration certain facts testified to (enumerating them); and that they are the sole judges of the weight and importance of each evidential fact appearing in the case. The third instruction called the jury's special attention to the evidence of T. G. Moore and J. W. L. Kyer, and to the interest they might possibly have in the result of the case, etc. So, under the issues of the present case, we are of opinion that the jury were fully instructed on behalf of the defendant.

In his argument before this Court, one of counsel for the plaintiff in error stressed the point that since Moore's testimony was to the effect that the sale was to be made at market price plus carriage, the fact that he states that other methods were used in determining the sales price of certain portions of the stock is tantamount to an admission that he has breached the contract himself, and is therefore not entitled to recover. From a careful reading of the record we are unable to find any substantial breach on the part of the plaintiff. In every case where the original "market price, plus carriage" was disregarded, it was in favor of the defendants' interests. The record discloses that the goods were secured at a great saving.

However, it is not necessary to pass on this point, since the record does not disclose that this matter was ever presented to the trial judge in making the motion to set aside the verdict of the jury and award the defendant a new trial.

Perceiving no reversible error in the record, the motion to reverse the judgment must be overruled, and the judgment affirmed.

*Affirmed.*