## CHARLESTON.

THE FIRST NATIONAL BANK OF HINTON *v.* WM. YOUNG *et als.*

(No. 6288).

Submitted September 25, 1928. Decided October 2, 1928.

*A. D. Daly,* for plaintiff in error.

*E. L. Hogsett* and *David F. Sheets,* for defendant in error.

WOODS, JUDGE:

This is an action by notice of motion for judgment on a negotiable note in the amount of $1,830.00 against Wm. O. Young and Lenna T. Young, as makers, and John F. Grossenbach, as payee. It is alleged to be held by plaintiff bank as collateral for a $1,200.00 note, given by said Grossenbach and discounted by it. On October 1, 1923, Grossenbach sold the Youngs a piece of real estate and took as part payment a series of notes, including a $1,830.00 note. No deed passed, but a contract was executed covering same. The note was renewed for another 365 days on October 1, 1924. Shortly before the renewal the Youngs sold their contract to one Gus Van Hoose and his sister, a Mrs. Forest, and these purchasers agreed to pay off the $1,830.00 note at the rate of $100.00 per month. The present action is brought on this renewal. At the time Grossenbach put up this renewal note as collateral, he owed plaintiff bank some $14,000.00. In order to obtain a loan of $800.00 cash, he gave the bank his note for $1,200.00 and placed the $1,830.00 note up as collateral. Later he sought to exchange another series of negotiable notes, bearing the signature of one Overton, as maker, for the note now sued on. Plaintiff complains of the action of the circuit court of Cabell county in entering judgment on the jury verdict in favor of Wm. O. Young and Lenna T. Young.

The jury were instructed, at the instance of the plaintiff, that they should find for the plaintiff on the note sued on, unless the bank accepted other collateral, or agreed to accept other collateral, in lieu thereof. The one instruction given for the defendant incorporated a like proposition. Plaintiff now insists that it was error to permit the introduction of parol

evidence to prove the alleged exchange of the collateral sued
on here; that such a transaction amounted, in effect, to a
"renunciation" of the note in so far as the plaintiff was con-
cerned; and that, therefore the only way the Youngs were en-
titled to show said exchange was by presenting an uncon-
ditional release in writing, as required by section 122 of the
Uniform Negotiable Instruments Act (Chapter 98-A, Code).
But are all releases required to be in writing? Brannan's
Negotiable Instruments (4th ed.) in discussing section 119 of
said act, states: "The maker of a note may be discharged by
an oral agreement, under which a note was taken in settle-
ment thereof at maturity, even though the old note was re-
tained by th· payee. An issue of fact is presented as to the
purpose          retention. Section 119, subd. 4, is broad
enou~·           discharge by novation without writing, and
is               ~tion 122." In a case in many respects
                 ·preme Court of Oklahoma held: "This
                 ·ion 122) has no application when the
                 ~er instruments in accord and satis-
                 22 was undoubtedly intended to
                 ° a negotiable instrument from
                 .ense of payment to or discharge
                 .e the instrument was in his hands.
                 the plaintiff's several objections to the
                 .uence were not brought to the attention of
                 .1 its motion to set aside the verdict and award
                 .al, or carried into proper bills of exceptions, the
                 .ust be treated as waived. *Dransfield* v. *Boone-Arm-*
*.~g Motor Co.*, 102 W. Va. 370; *Roberts* v. *Lykins*, 102 W.
· a. 409; *Tuggle* v. *Belcher*, 104 W. Va. 178; *Moore* v. *Hutch-*
*inson*, 104 W. Va. 403. Since on this appeal we must treat all
the evidence as going to the jury without objection while
rules of law might have excluded much of it, if seasonable
objection had been made thereto, the jury had the right, and
it was their duty, to consider it and give it such weight as
they believed it to be entitled to. So, in this status of the
case, the question of whether section 122 is applicable becomes
immaterial.

Is the verdict contrary to the law and the evidence? The

one issue is whether, in fact, there was an acceptance of other collateral in exchange for the $1,830.00 note now sued on. Three witnesses take the stand—the cashier of the plaintiff bank, and defendants Grossenbach and Lenna T. Young. Grossenbach testifies as to his financial dealings with plaintiff bank, as well as with the makers of the note in question. He states that he received only $800.00 on his $1,200.00 note; that on the 19th day of October, 1925, in a letter to the cashier of plaintiff bank, he stated: ''In order to have your records in good shape, I am enclosing another series of notes to substitute as collateral for the $1,830.00 note.'' Later, according to his testimony, he went to the bank and demanded the $1,830.00 note, but the cashier stated at that time that he had misplaced the same, and gave that as a reason for not returning it to him (Grossenbach). He went to the bank and asked for the note half dozen times, and the cashier promised he would find it and mail it to him. The cashier, on the other hand, denies any such conversation. However, he does admit receiving the letter and the notes, and places them in evidence. That the bank did not reply to the letter enclosing the Overton notes, and that it accepted said Overton notes, and later brought suit on them for collection, are strong circumstances in favor of Young's defense. The cashier's only explanation of the bank's action in retaining the Overton notes was that it was entitled to all the collateral it could obtain. He admits that he made no demand upon Grossenbach for additional collateral. It is unlikely that Grossenbach, in the absence of such demand, would proffer notes, which on their face amounted to more than the $1,830.00 note, as additional collateral.

The note sued on was held as collateral. It was a separate obligation attached to another contract to guarantee the latter's payment. In effect it was security taken for payment of the latter. Upon the renewal of the note for which it was held as collateral, it became security for the new note. The exchange of notes on the part of the bank and Grossenbach amounted merely to exchange of security. It cannot be doubted that a bank may exchange security given by a debtor at any time. Exchanging collateral is a common, every-day occurrence in banking. It is done as a matter of common

usage and practice, and in the usual course of business. 7 C. J. 552. By analogy the same rule would obtain here as where the defense of payment or satisfaction of an instrument is interposed. It is an affirmative defense, the burden of proof being on the defendant. The defense must be sustained by a fair preponderance of the evidence. *Dodrill* v. *Gregory,* 60 W. Va. 118; 8 C. J., section 1365. The general rule as to the conclusiveness of the verdict found on conflicting evidence is applicable here. Upon a review and careful consideration of the evidence, we are of opinion that the appellees have borne the burden cast upon them by the law.

*Affirmed.*