# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2025 Term

_____

No. 24-ICA-68
_____

HEIDI PRICE, ADMINISTRATRIX OF THE ESTATE OF
ELLIS WAYNE PRICE,
Plaintiff Below, Petitioner,

v.

RALEIGH GENERAL HOSPITAL, LLC, and PHILIP BAILEY,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Raleigh County

Honorable Darl W. Poling, Judge

No. CC-41-2023-C-331

AFFIRMED.
_____

Submitted: January 14, 2025
Filed: March 4, 2025 _____

P. Gregory Haddad, Esq.
Samuel A. Hrko, Esq.
Christopher D. Smith, Esq.
Bailey Glasser LLP
Charleston, West Virginia
Counsel for Petitioner

John T. Jessee, Esq.
Sarah C. Jessee, Esq.
Lewis Brisbois Bisgaard & Smith LLP
Roanoke, Virginia
Counsel for Respondent,
Raleigh General Hospital, LLC

Tamela J. White-Farrell, Esq.
J. Ben Shepard, Esq.
Robert E. White, Esq.
Farrell & Farrell PLLC
Huntington, West Virginia
Counsel for Respondent,
Philip Bailey, PA-C

JUDGE GREEAR delivered the Opinion of the Court.
JUDGE WHITE concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

GREEAR, JUDGE:

Petitioner, Heidi Price, Administratrix of the Estate of Ellis Wayne Price ("Estate") appeals the January 25, 2024, order of the Circuit Court of Raleigh County dismissing the Estate's underlying medical malpractice action against Respondents Raleigh General Hospital, LLC ("RGH") and Philip Bailey[1] (collectively "Respondents"), pursuant to the Covid-19 Jobs Protection Act, West Virginia Code §§ 55-19-1 to -9 (2021) ("Act"). On appeal, the Estate argues that the circuit court erred by dismissing the matter before limited discovery could be completed to determine if the medical care Mr. Price received from Respondents was impacted by COVID-19.[2] Further, the Estate contends that the circuit court's interpretation and application of the Act violated the Estate's procedural due process rights. In conclusion, the Estate asserts the circuit court erred in dismissing this matter, as Respondents failed to meet their burden of establishing "impacted care[,]" as required by the Act. After our review of the record and applicable law, we find no error and affirm the circuit court's January 25, 2024, order dismissing the Estate's underlying action.

---

[1] Cherokee Emergency Services, Inc., was a named defendant in the underlying matter but is not a party to this appeal.

[2] In *Eldercare of Jackson County, LLC v. Rosemary Lambert and Carolyn Hinzman*, 250 W. Va. 291, 902 S.E.2d 840 (2024), the Supreme Court of Appeals of West Virginia ("SCAWV") noted that "Coronavirus Disease 2019 (COVID-19) is a viral illness caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). It is a highly contagious and potentially deadly illness." *Id*. at ___, 902 S.E.2d at 849.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of December 10, 2021, Mr. Price presented to RGH's Emergency Department ("ER") with complaints of chest pain. Following initial testing and assessment, it was determined that Mr. Price was at risk of an evolving myocardial infarction, i.e., heart attack. Shortly thereafter, an order for administration of medications to treat this condition was submitted by RGH staff. However, the actual administration of said medications was delayed. In the interim, secondary testing was conducted upon Mr. Price, which confirmed that he had sustained an ST-elevation myocardial infarction. Following the secondary testing, RGH staff submitted a second order for new medications to be administered to Mr. Price. These medications were administered approximately one hour following the entry of the second order, seven to eight hours from the time Mr. Price initially entered the RGH ER on December 10, 2021.

Thereafter, on October 6, 2023, the Estate filed the underlying medical malpractice complaint against Respondents. In the complaint, the Estate generally alleged Respondents' negligence and vicarious liability for the delay in the administration of medications to Mr. Price, which the Estate contends caused Mr. Price to have medical complications (including a myocardial infarction) that, ultimately, led to his death. Specifically, the Estate alleged that Respondents "failed in their duty to provide that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances." Further, the Estate contends that Respondents' "failure to provide

2

the appropriate care to Ellis Wayne Price was conducted in a manner that was willful and wanton and/or in the reckless disregard of risk of harm" to Mr. Price. [3]

In response to the complaint, Respondents averred that, due to the COVID-19 pandemic, on the day Mr. Price sought medical treatment at RGH, there was a surge of patients at RGH, which impacted RGH's care giving abilities and caused significant delays. Respondents argued that there was a dramatic increase in COVID-19 patients in RGH's ER from December 8 to December 12, 2021, and that, during this time frame, the RGH ER waiting room was overcapacity, in conjunction with RGH being understaffed due to employees being off work because of actual or suspected COVID-19 infection. Thus, Respondents argue the care of Mr. Price was "impacted care" due to COVID-19. Respondents moved to stay the proceedings below and requested an evidentiary hearing to determine if the Estate's claims were barred by the Act. In support of their motions for stay, Respondent RGH submitted affidavits of multiple RGH employees substantiating that their care of Mr. Price was "impacted care" due to COVID-19.

On November 27, 2023, the circuit court entered an order staying all case proceedings and instructing the parties to contact the court "to schedule a hearing on this matter without further delay." On January 3, 2024, the Estate filed a Notice of Hearing

---

[3] The record reflects that Mr. Price did not have a COVID-19 infection at the time of his underlying treatment with Respondents. Further, there is no allegation that Mr. Price's death was related to the contraction, at any time, of COVID-19.

3

setting Respondents' motions to stay and the Estate's Motion to Lift Stay for hearing on January 10, 2024. Thereafter, on January 10, 2024, an evidentiary hearing was held before the circuit court, pursuant to West Virginia Code § 55-19-3(1)(H)(10) (2021), to determine whether Respondents' care "offered, delayed, postponed, or otherwise adversely affected" to Mr. Price at RGH on December 10, 2021, "was related to COVID-19 or the COVID-19 emergency."

At the evidentiary hearing, Respondents again provided affidavits of RGH's employees to substantiate Respondents' contention that their care of Mr. Price was "impacted care" due to COVID-19, triggering the application of Act. During the hearing, the Estate did not call any witnesses or introduce any evidence in opposition to Respondents' arguments or affidavits. Rather, the Estate argued that its "inability to conduct discovery" prohibited it from "being able to adequately evaluate potential witnesses." However, at the hearing, the Estate acknowledged that it was aware that this matter had been set for an evidentiary hearing on that day, during which it "could have subpoenaed witnesses to challenge the assertions contained in the affidavits and to challenge assertions of impacted care." Further, during the hearing, the Estate made no argument that Respondents' actions or inactions alleged in the underlying complaint constituted actual malice or were intentional in nature. Following the hearing, the circuit court entered its January 25, 2024, order dismissing the Estate's complaint pursuant to the Act. This appeal followed.

4

## II. STANDARD OF REVIEW

Where the issue on an appeal from the circuit court is clearly a question of law involving an interpretation of a statute, we apply a de novo standard of review. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995). Further, we review "the circuit court's final order and ultimate disposition under an abuse of discretion standard [and] challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." *See Blair v. Brunett*, 248 W. Va. 495, 500, 889 S.E.2d 68, 73 (2023). With these standards in mind, we now turn to the Estate's arguments.

## III. DISCUSSION

On appeal, the Estate argues three assignments of error, which we will address in turn. First, the Estate argues that the circuit court erred in failing to allow limited discovery to determine if Respondents' care of Mr. Price was impacted by COVID-19 prior to dismissing the Estate's compliant. Based upon our review of the explicit and clear language of the Act, we disagree.

In drafting the Act, the West Virginia Legislature stated its findings and purpose to include

> (11)  The threat of liability poses an obstacle to efforts to reopen and rebuild the West Virginia economy and to continue to provide medical care to impacted West Virginians.

> (12)  The diagnosis and treatment of COVID-19 has rapidly evolved from largely unchartered, experimental, and

5

anecdotal observations and interventions, without the opportunity for the medical community to develop definitive evidence-based medical guidelines, making it difficult, if not impossible, to identify and establish applicable standards of care by which the acts or omissions of health care providers can fairly and objectively be measured.

(b) It is the purpose of this article to:

(1) Eliminate the liability of the citizens of West Virginia and all persons including individuals, health care providers, health care facilities, institutions of higher education, businesses, manufacturers, and all persons whomsoever, and to preclude all suits and claims against any persons for loss, damages, personal injuries, or death arising from COVID-19.

West Virginia Code § 55-19-2.

In *Eldercare*, the SCAWV described the Act as creating statutory immunity, noting that, through the Act, "the Legislature provided for broad immunity from liability to, *inter alia*, health care facilities and health care providers for injury or death arising from COVID-19 or 'COVID-19 care.'" 250 W. Va. at ____, 902 S.E.2d at 850. Specifically, in § 55-19-4, the Legislature expressly provided that

[n]otwithstanding any law to the contrary, except as provided by this article, there is no claim against any person, essential business, business, entity, health care facility, health care provider, first responder, or volunteer for loss, damage, physical injury, or death arising from COVID-19, from COVID-19 care, or from impacted care.

6

"Arising from COVID-19" was defined by the Legislature, in West Virginia Code § 55-19-3(1), as

> any act from which loss, damage, physical injury, or death is caused by a natural, direct, and uninterrupted consequence of the actual, alleged, or possible exposure to, or contraction of, COVID-19, including services, treatment, or other actions in response to COVID-19, and without which such loss, damage, physical injury, or death would not have occurred, including, but not limited to:
>
> .  .  .
>
> (H)    Providing services or products as an essential business, health care facility, health care provider, first responder, or institution of higher education.

Central to the instant case is a determination of whether the care Respondents provided to Mr. Price was "COVID-19 impacted care." In West Virginia Code § 55-19-3(10), "[i]mpacted care" was defined as

> care offered, delayed, postponed, or otherwise adversely affected at a health care facility or from a health care provider that impacted the health care facility or health care provider's response to, or as a result of, COVID-19 or the COVID-19 emergency: Provided, That this provision does not prohibit claims that may otherwise be brought pursuant to § 55-7B-1 et seq. of this code so long as such claims for loss, damage, physical injury, or death are unrelated to COVID-19 or the COVID-19 emergency and the care provided. If the issue of impacted care is raised by a defendant under § 55-19-4 of this code, the circuit court shall, upon motion by the defendant, stay the proceedings, including any discovery proceedings, and, as soon as practicable, hold a hearing to determine whether the care offered, delayed, postponed, or otherwise adversely affected at a health care facility or from a health care provider was related to COVID-19 or the COVID-19 emergency. If the circuit court determines that the care offered, delayed, postponed, or otherwise adversely affected at a health care

7

facility or from a health care provider was related to COVID-19 or the COVID-19 emergency and the care provided, then the cause of action shall be dismissed under § 55-19-4 of this code.

It has long been the jurisprudence in this state that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).[4] As to construction of statutory provisions in West Virginia, the SCAWV has further declared that it is the "cardinal rule of statutory interpretation . . . to first identify the legislative intent expressed in the promulgation at issue. To this end, [the SCAWV has] recognized that '[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.'" *In re Clifford K.*, 217 W. Va. 625, 633, 619 S.E.2d 138, 146 (2005) (quoting Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975)). As referenced in *In re Clifford K.*, 217 W. Va. at 633, 619 S.E.2d at 146 (2005), the next step in statutory construction is to "scrutinize the specific language employed in the enactment." Along that vein, the SCAWV has long held that

---

[4] *See also* Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. Pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965) ("Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein.").

> [a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect. Syllabus point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)[; a]ccord *DeVane v. Kennedy*, 205 W. Va. 519, 529, 519 S.E.2d 622, 632 (1999) ("Where the language of a statutory provision is plain, its terms should be applied as written and not construed." (citations omitted)).

*In re Clifford K.*, 217 W. Va. at 633, 619 S.E.2d at 146.

On appeal, the Estate suggests the possible ambiguity of West Virginia Code § 55-19-4 by referencing comments made by certain members of the West Virginia Legislature during discussions related the Act. Specifically, the Estate argues that, when passing the Act in 2021, certain members of the Legislature expressed their belief that West Virginia Code § 55-19-4 afforded a fact-based defense, which would require discovery. However, arguments on the floor of the West Virginia Legislature, presumably showing the intent of some members of the Legislature, not the Legislature as a whole, are simply not relevant when the statute adopted and passed by the Legislature clearly, and unambiguously, provides no discretion to the circuit court to permit limited discovery. The SCAWV has consistently held that in interpreting statutory law, "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray C., II*, 230 W. Va. 355, 738 S.E.2d 21 (2013). Thus, here, we analyze the propriety of the circuit court's decision below by the Legislature's directly noted purpose of the Act to

9

"[e]liminate the liability of . . . health care providers, [and] health care facilities . . . and to preclude all suits and claims against any persons for loss, damages, personal injuries, or death arising from COVID-19." *See* West Virginia Code § 55-19-2.

As expressly required by West Virginia Code § 55-19-3(10), the circuit court was mandated to stay the proceedings below, "including any discovery proceedings," upon defendant's motion. Thus, the circuit court, upon Respondents' motions, properly issued a stay of the case, including a stay of discovery proceedings. The Act provided no discretion to allow the circuit court to permit limited discovery, as requested by the Estate, prior to the evidentiary hearing or otherwise. Under the plain language of § 55-19-3(10), the circuit court had only the authority to hold a hearing to determine whether the care provided to Mr. Price was impacted by the COVID-19 emergency, which it completed.[5] We find this consistent with the stated purpose of the Act as specifically noted by the Legislature. Accordingly, we find no merit in the Estate's arguments in this regard.

---

[5] Consistent with the handling of other immunities, the party asserting immunity bears the burden of proving the condition which triggers the immunity. *See West Virginia Bd. of Educ. v. Marple*, 236 W. Va. 654, 667, 783 S.E.2d 75, 88 (2015) (Qualified immunity is an affirmative defense …); *Grim v. Eastern Electric, LLC*, 234 W. Va. 557, 567, 767 S.E.2d 267, 277 (2014) (Burden of persuasion shifts to the defendant when the defendant alleges an affirmative defense); *First Nat. Bank of Hinton v. Young et al.*, 106 W. Va. 134, 135, 145 S.E. 39, 40 (1928) (As an affirmative defense, the burden of proof is on the defendant). As this is related to a civil action, the standard of proof would be a preponderance of the evidence. *Id.* at 135, 145 S.E. at 40. Accordingly, at the conclusion of the hearing held under West Virginia Code § 55-19-3(10), the court must determine whether the care in controversy was "impacted care[.]" If so, the court is required to dismiss the action. If the party seeking immunity fails to meet its burden of proof, then the statutory immunity would not apply and the stay on further proceedings should be lifted.

10

The Estate further argues that the circuit court improperly converted a motion to dismiss under Rule 12 of the West Virginia Rules of Civil Procedure into a motion for summary judgement under Rule 56, without allowing discovery. However, such an argument incorrectly identifies the nature of the motions in this case. Below, the motion for stay, and ultimate dismissal, was made pursuant to a specific statutory immunity provision. The statutory provision requires that a hearing be held in order to determine the applicability of the provision. Nothing in the statute prohibits consideration of matters or evidence outside of the scope of the pleadings.

Additionally, we note that the court below is required, per the express terms of West Virginia Code § 55-19-4, to determine whether the alleged care is impacted by COVID-19. Often this determination will require the resolution of an issue involving disputed facts. Thus, the motion at issue is not a motion for summary judgment pursuant to Rule 56. Instead, the Act statutorily created a summary proceeding, by virtue of an evidentiary hearing, designed to determine the applicability of a statutory immunity. Accordingly, the issue of whether discovery is appropriate must be determined by the text of the statutory provision itself and is not inconsistent with Rules 12 or 56 of the West Virginia Rules of Civil Procedure. Therefore, we find no error in the circuit court's determination that the text of the Act does not permit the discovery requested by the Estate.[6]

---

[6] The dissent argues that the circuit court retained discretion to allow limited discovery after the statutorily required hearing had been held. However, that issue was never raised or presented in this case. In the case below, Petitioner specifically requested that the discovery stay be lifted prior to the hearing. Accordingly, the dissent would have

this court enter an advisory opinion on an issue not presented under the facts of the present case. "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes." Syl. Pt. 1, *State ex rel. John D. Perdue v. McCuskey,* 242 W.Va. 474, 836 S.E.2d 441 (2019). This Court, like the SCAWV, is not authorized to resolve such hypothetical case scenarios:

> It is a deeply rooted and fundamental law that 'this Court is not authorized to issue advisory opinions[.]' *State ex rel. City of Charleston v. Coghill*, 156 W. Va. 877, 891, 207 S.E.2d 113, 122 (1973) (Haden J., dissenting) ... This Court further addressed the issue of advisory opinions in *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185-86, 27 S.E.2d 486, 487-88 (1943), as follows: Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.

*State ex rel. Morrisey v. W. Va. Off. of Disciplinary Couns.*, 234 W. Va. 238, 246, 764 S.E.2d 769, 777 (2014).


Even assuming this issue was properly before this Court, the dissent is incorrect on the merits. That statutory language mandates a stay of "any" discovery. "Any" is a universal term without limitation that contains no exceptions. The dissent would have us re-write the statute in question by adding the phrase "except for limited discovery which may at the discretion of the court be allowed following the hearing." It is not the province of this Court, or any other, to re-write legislation into a form which it may find more acceptable but is instead the job of this Court to apply the applicable statute as written. As the SCAWV has long held, "[i]t is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Phillips v. Larry's Drive-in Pharmacy, Inc.*, 220 W. Va. 484, 491, 647 S.E.2d 920, 927 (2007). Moreover, it has been the consistent position of the SCAWV that

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to

12

Next, the Estate contends that, to the extent the circuit court properly interpreted and applied the Act, it erred in applying a statute that interferes with the Estate's procedural due process rights and the court's ability to set its own procedural rules. Specifically, the Estate breaks this down to two arguments, the first being that the Act deprives medical malpractice plaintiffs of due process. We disagree. In addressing this argument, we must first apply the presumption of constitutionality. "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." *Fleming v. Carmichael*, 250 W. Va. 67, ___, 902 S.E.2d 199, 205 (2024).

With this presumption in mind, we find a stay of discovery is not a violation of procedural due process under the specific and limited circumstances set forth in the Act.

---

enforce legislation unless it runs afoul of the State or Federal *Constitutions.*

Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009); *accord Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."); Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965) ("Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary.") As such, the remedy for this perceived inequity lies not with this Court, but with the West Virginia Legislature.

Not only must the potential immunity first be raised by a defendant seeking the protection of the Act, but the parties are then provided an evidentiary hearing to resolve the question of impacted care. *See* W. Va. Code § 55-19-3(10). Here, the Estate was provided the due process of an evidentiary hearing in order to address the Respondents' contention of impacted care and applicability of the Act. The Estate could have subpoenaed witnesses and/or documents, provided statistical data from the West Virginia Department of Health and Human Resources regarding what counties had a significant increase in COVID-19 cases, or attacked the evidence submitted by RGH. The Estate also could have issued subpoenas for those individuals who submitted affidavits and conducted cross-examination. Here, the Estate did none of those things. The SCAWV has previously recognized that "some type of an orderly hearing is the cornerstone of procedural due process." *North v. West Virginia Board of Regents*, 160 W. Va. 248, 253, 233 S.E.2d 411, 415 (1977) (*citing Mathews v. Eldridge,* 424 U.S. 319 (1976)); *see also White v. Barill*, 210 W. Va. 320, 557 S.E.2d 374 (2001) (notice and opportunity to respond are essential due process requirements). Below, the Estate had an opportunity to challenge the evidence provided in the evidentiary hearing but chose not to do so and instead relied upon arguments in favor of obtaining limited discovery, which is not permitted under the express provisions of West Virginia Code § 55-19-3(10). Under these circumstances and in the proceedings below, we find that the Estate's procedural due process rights were not violated. [7]

---

[7] During oral argument, the Estate argued that discovery was necessary due to the late disclosure of the affidavits offered by Raleigh General. However, the remedy for any

The Estate further contends that the Act violates the West Virginia Constitution's separation-of-powers principles. In addressing this issue, we must first note that the Estate's argument is in essence a skeletal argument, which lacks any reasonable specificity or meaningful explanation. *See Hatcher v. McBride*, 221 W. Va. 760, 766, 656 S.E.2d 789, 795 (2007) ("[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim .... Judges are not like pigs, hunting for truffles buried in briefs.") (internal citation omitted). "In the absence of such supporting arguments or authority, we deem these assignments of error to have been waived." *Id.*

Despite the lack of analysis in the Estate's arguments as to this issue, we find that the Act does not violate the separation-of-powers principles within the West Virginia Constitution. "The general powers of the legislature are almost plenary. It can legislate on every subject not interdicted by the Constitution itself. In considering constitutional restraint, the negation of legislative power must appear beyond reasonable doubt." *State ex rel. Appalachian Power Co. v. Gainer.* 149 W. Va. 740, 747, 143 S.E.2d 351, 357 (1965).

---

perceived prejudice in that regard would have been for the Estate to move for a continuance of the evidentiary hearing. Similarly, the identification of additional witnesses or documents during the statutorily required hearing would be a sufficient reason to justify a continuance to allow the parties to subpoena these witnesses or documents. Yet, the record establishes that the Estate made no such motion. Accordingly, we find that discovery not otherwise allowed under the Act is not an appropriate remedy for "alleged" surprise witnesses, particularly when the complaining party made no motion for a continuance below and offered no evidence disputing Respondents' claim of "impacted care."

15

In the underlying case, the Act's express purpose was to eliminate liability and to preclude all suits and claims due to care which was impacted by the COVID-19 pandemic. *See generally* W. Va. Code § 55-19-2(b). The language of West Virginia Code § 55-19-3(10) operates as a statutory immunity. As stated by the SCAWV, "[t]he very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case." *Yoak v. Marshall University Bd. Of Governors*, 223 W. Va. 55, 59, 672 S.E.2d 191, 195 (2008) (internal citations omitted). This "includes the burden of discovery." *Id.* To rule the Act is in violation of the separation-of-powers principle would require a finding that the Legislature does not have the authority to create statutory immunities, which is wholly unsupported by law and fact. We decline to make such a sweeping finding. Therefore, we find that the Act does not violate the concept of separation-of-powers as set forth in the West Virginia Constitution.

The Estate's final assignment of error asserts that the evidence presented by Respondents was insufficient to meet their burden of establishing impacted care. We disagree. We acknowledge that the circuit court's findings of fact and conclusions of law could have been drafted with greater clarity and more precision. However, when there is sufficient information in the record regarding the facts which control disposition of the case it will be disposed of without remanding it to the trial court. *See Tice v. Veach,* 250 W. Va. 482, 904 S.E.2d 484 (Ct. App. 2024); quoting *Prete v. Merchants Prop. Ins. Co. of Indiana,* 159 W. Va. 508, 512, 223 S.E.2d 441, 444 (1976). In the underlying case, although the order entered by the circuit court could have been more detailed, it is clear from the record

16

what evidence the court relied upon in making the determinations contained in its order. Accordingly, we find that the circuit court's January 25, 2024, order is sufficient for our review.[8]

With respect to the sufficiency of the evidence, we note that the only evidence introduced was the medical records of Mr. Price and the affidavits offered by the Respondent RGH. The court below specifically noted that the Estate failed to offer any evidence in opposition to the affidavits submitted by RGH. Accordingly, the only issue to be decided is whether the circuit court's determination that "the care provided to Ellis W. Price, or the alleged failure to provide care, was adversely impacted by the COVID-19 emergency" is supported by evidence submitted by Respondents.[9] Generally, findings of fact of a trial court judge sitting without a jury are accorded great weight. *Everett v. Brown*, 174 W. Va. 35, 37, 321 S.E.2d 685, 688 (1984).

The court below noted that the Respondents asserted, through affidavits, that the care offered, delayed, postponed, or otherwise adversely affected at Raleigh General or from Respondent Bailey, was related to COVID-19 or the COVID-19 emergency.

---

[8] The Estate did not raise the issue of the sufficiency of the order with respect to findings of fact and conclusions of law in any of its assignments of error.

[9] While the dissent accuses this Court of taking on the role of fact finder, this assertion is incorrect. In order to address the Estate's contention that Raleigh General failed to meet its burden of establishing impacted care, it is necessary to review the record and determine whether sufficient evidence was presented to support the conclusion of the court below. Such an exercise will necessarily involve a discussion of the evidence below.

17

Specifically, Penni Hall's affidavit alleged that "Mr. Price's alleged treatment delay was directly related to a census increase and staffing shortage caused by a surge in COVID-19 infection within Raleigh County…." While such assertion may be broad and could have been the subject of inquiry under cross examination had Ms. Hall been subpoenaed to testify, in the absence of any evidence to the contrary, we find that the circuit court's determination that Respondents had met their burden of establishing impacted care was supported by the evidence actually introduced by the parties.

## IV. CONCLUSION

For the foregoing reasons, we find the circuit court did not err in complying with the plain language of the Act and that the Act is constitutional. We further find that the evidence supports the court's conclusion that the treatment provided to Mr. Price was impacted by COVID-19. Accordingly, the circuit court's January 25, 2024, order is affirmed.

Affirmed.